IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| JAKWARIS ROBISON, ) | |
| ) | |
| Plaintiff, ) | 1:20-cv-00263-RAL |
| ) | |
| vs. ) | |
| ) | RICHARD A. LANZILLO |
| ) | UNITED STATES MAGISTRATE JUDGE |
| CORRECTIONAL OFFICER NICK TESTA, ) | |
| WARDEN KEVIN SUTTER, COUNTY ) | |
| EXECUTIVE KATHY DAHLKEMPER, ) | |
| ) | ECF NO. 23 |
| Defendants, ) | |

MEMORANDUM OPINION

I.  Introduction

Plaintiff Jakwaris Robison (Robison) commenced this civil rights action pursuant to 42 U.S.C. § 1983 against three defendants: Nick Testa (Testa), a corrections officer at the Erie County Prison (ECP), Kevin Sutter (Sutter), the ECP's Warden, and Kathy Dahlkemper (Dahlkemper), the Erie County Executive. This action arises out of an altercation between Robison and another inmate while Robison was detained in the ECP's maximum-security unit awaiting trial on criminal charges. ECF No. 21 (Amended Complaint). Robison alleges that Testa used excessive force in response to the altercation and that Sutter and Dahlkemper failed to properly train and supervise Testa. ECF No. 21, ¶¶ 3, 14. The Defendants have moved to dismiss Robison's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and, in the

1

alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.  ECF No. 23.  For the following reasons, the Defendants' motion will be granted.[1]

II.     Material Facts

On August 15, 2020, while Robison was present in the day room of the ECP's maximum-security unit, he started a fight with another inmate, Jesse Ingram (Ingram).  As the altercation escalated, Testa and other corrections officers intervened.  Stationary video cameras at the prison captured these events from four angles.  The cameras recorded video in color without audio.  The Defendants have preserved all four videos and submitted them in support of their pending motion.  ECF No. 20 (Exhibit B).  The video recordings, as supplemented by other evidentiary materials, show the following:

The fight began when Robison struck Ingram from behind.  Ingram fought back.  ECF No. 21, ¶ 8 (Amended Complaint); ECF No. 23-1, ¶¶ 4–6 (Affidavit of Holman).[2]  At the time of the incident, nine inmates and two corrections officers were walking or standing in the diamond-shaped day room of the housing unit.  As Robison and Ingram approached each other at an angle, they appeared to have exchanged comments and gestures.  They then continued to walk next to each other for a few seconds with their heads turned to face each other as if engaged in conversation.  After Ingram stepped ahead of Robison, Robison raised his right arm and hand and forcefully punched Ingram in his right jaw.  The blow caused Ingram to fall to the floor and drop the mug he was carrying.  Robison then tackled Ingram, hunched over him, and punched

---

[1] This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.  The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.  ECF Nos. 2, 16.

[2] The Defendants have submitted an affidavit from Erie County Prison Deputy Warden Michael Holman that authenticates the videos and identifies Robison, Ingram, and Testa in the videos.  ECF No. 23-1, ¶¶ 7, 18 (Exhibit A).  Robison does not dispute the authenticity of the videos or Holman's identifications.

him in the head six times. Robison also thrusted his knee into Ingram's head four times. At the same time, another inmate approached to within approximately a dozen feet of the altercation.

When the fight began, Testa and another officer were standing behind the desk about ten feet away. Testa activated his radio and stepped out from behind the desk while shaking a can of oleoresin capsicum spray (OC spray). Robison then stood up, raised his hands, and stepped about ten feet away from Ingram. Testa gestured with his arm for Robison to lay on the ground, and Robison complied, lowering himself to a prone position. As Robison was stepping away, Ingram approached and then punched Robison. At this point, both men went to the ground and wrestled while exchanging repeated blows. Approximately three seconds into their renewed fight, Testa deployed successive bursts of OC spray on Ingram and Robison.[3] During the renewed fight, the third inmate who was standing nearby began to approach the group, but stepped away when Testa and the other officer spoke to him and gestured him away.

Despite Testa's initial use of OC spray, Robison and Ingram continued to fight for approximately seventeen seconds during which time Testa again deployed OC spray on each of them. After Robison thrusted his knee one last time into Ingram's head, he separated from him. Both Robison and Ingram then laid face down on the ground. Approximately thirty seconds later, ten officers entered the day room, secured the scene, and handcuffed both inmates. The videos end with officers taking Robison and Ingram out of the day room. Afterward, according to his Amended Complaint, Robison was taken for a shower and then placed in the restricted housing unit. ECF No. 21, ¶ 9.

---

[3] The Court agrees with the Defendants that whether Testa used a second burst of OC spray on Ingram at this moment is irrelevant to whether the force used on Robison was excessive. *See* ECF No. 24, p. 7.

The Defendants have moved to dismiss the Amended Complaint for failure to state a claim and, alternatively, for summary judgment. ECF Nos. 23, 24. The Court ordered Robison to respond and notified the parties that the "pending motion may be treated, either in whole or in part, as a motion for summary judgment." *See Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010). ECF No. 25. The Court's order also advised Robison that the motion "will be evaluated under the standard set forth in Rule 56 of the Federal Rules of Civil Procedure." *Id*. Robison filed a brief in opposition to the motion but submitted no additional evidence. ECF No. 26. The Defendants' motion is ripe for disposition.

III.   Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc*., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am*., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the

nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party may also rely on the lack of evidence to support an essential element of the opposing party's claim as a basis for the entry of summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

Because Robison is proceeding *pro se*, the court will "apply the applicable law, irrespective of whether [he] has mentioned it by name." *Holley v. Dep't of Veteran's Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999). On a motion for summary judgment, however, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion …" *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted). Put another way, *pro se* status does not relieve a non-moving party of his "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id*. (quoting *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz*, 2012 WL 4343176, at *1 (W.D. Pa. Sept. 21, 2012).

When the events at issue have been captured on video, the court must consider that evidence in determining whether there is any genuine dispute as to material facts. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007). The court must view the facts "in the light depicted by the video[ ]." *Id.* (relying on a video recording in assessing summary judgment evidence). At summary judgment, "[i]n cases where there is a reliable video depicting the events in question, courts must not adopt a version of the facts that is 'blatantly contradicted' by the video footage." *Jacobs*, 8 F.4th at 192 (quoting *Scott*, 550 U.S. at 380). When video evidence is not dispositive on a material issue, the court should consider other evidence in the record in the light most favorable to the non-moving party. *See Fraire v. Arpaio*, 2017 WL 476618, at *3–5 (D. Ariz. Feb. 6, 2017). *See also Smalls v. Sassaman*, 2019 WL 4194211, at *8 (M.D. Pa. Sep. 4, 2019) (citing *Tindell v. Beard*, 351 Fed. Appx. 591 (3d Cir. 2009)) (in the Eighth Amendment context, if a review of the video "refutes an inmate's claims that excessive force was used against him, … summary judgment is entirely appropriate.").

IV.   Analysis

Relying primarily on the video evidence, the Defendants argue that no reasonable jury could find that Testa used excessive force when he deployed OC spray to end the fight between Robison and Ingram and reestablish control. ECF No. 23, ¶ 16(a). They also maintain that Testa is entitled to qualified immunity. ECF No. 24, ¶ 16(b). Although the Defendants misconstrue the legal standard applicable to Robison's claim, their ultimate positions are correct. The video recordings demonstrate that Testa's use of OC spray and overall response to the incident were objectively reasonable under the circumstances. ECF No. 24, p. 10. No genuine dispute of material fact remains for trial concerning Robison's excessive force claim, and Testa is entitled to judgment in his favor as a matter of law.

As a pretrial detainee at the time of the incident, Robison was entitled to the protections of the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S 520 (1979). The Defendants argue that the Eighth Amendment's "cruel and unusual" punishment standard, which applies to excessive force claims by convicted prisoners, also applies to such claims by pretrial detainees. In support of this position, the Defendants rely on the Court of Appeals for the Third Circuit's decision in *Fuentes v. Wagner*, 206 F.3d 335, 346-47 (3d Cir. 2000), which held that a pretrial detainee asserting such a claim must show not only that the force used by the defendant was excessive, but also that the force was applied "maliciously and sadistically." In *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 194 (3d Cir. 2021), however, the Court of Appeals recognized the Supreme Court's rejection of the latter element of the Eighth Amendment standard as incompatible with the rights of pretrial detainees under the Fourteenth Amendment:

> In 2015, the Supreme Court clarified that the subjective Eighth Amendment standard does not apply to pretrial detainees. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015). "The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Id.* (quoting *Graham*, 490 U.S. [386], 398 n.11, 109 S.Ct. 1865 (1989)). Instead, the Court held that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97, 109 S.Ct. 1865 (emphasis added). The Court thus clarified that the Fourteenth Amendment, like the Fourth, exclusively employs an objective-reasonableness standard.

*Jacobs*, 8 F.4th at 194. *See also Ornstein v. Warden*, 2021 WL 4290180, at *6 (M.D. Pa. Sept. 21, 2021) (slip copy).

Thus, the applicable standard for a pretrial detainee's excessive force claim is whether the officer used "objectively unreasonable force." *Jacobs*, 8 F.4th at 194. This analysis requires

7

"careful attention to the facts and circumstances of each particular case." *Id.* (quoting *Graham*, 490 U.S. at 396). The Supreme Court has identified a nonexclusive list of six factors (the *Kingsley* factors) to guide courts in conducting this analysis. *Id*. at 194-95 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). These factors are: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* This analysis proceeds from "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397 (citing *Graham*, 490 U.S. at 396).

Regarding the first *Kingsley* factor— "the relationship between the need for the use of force and the amount of force used"—the videos show that the circumstances Testa confronted reasonably required his use of some level of force throughout the altercation between Robison and Ingram. Despite Testa's verbal and physical commands to stop, both men continued to trade blows. Their ongoing fight placed both men at risk of serious injury. If allowed to continue, the altercation also could have spread to the other inmates and detainees who were present in the day room. Because Testa's verbal commands proved inadequate to stop the violence, Testa's decision to escalate to the use of OC spray was objectively reasonable. *See Passmore v. Ianello*, 528 Fed. Appx. 144, 148 (3d Cir. 2013) (per curiam) (use of pepper spray was not excessive force where inmate failed to comply with verbal orders); *Jackson v. Beard*, 2016 WL 3621279, at *8 (M.D. Pa. Mar. 31, 2016) ("[C]ourts have consistently found that an isolated discrete use of pepper spray does not state an Eighth Amendment claim."). This assessment applies to Testa's initial use of OC spray. It also applies to his second use because the fight continued after the

8

initial use.  *Compare with Jacobs*, 8 F.4th at 195 (no need for officers to use any force when the fight had ended fifteen minutes earlier and the inmate was orderly, compliant, and presented no threat).  While it is not clear based on the videos whether Testa used OC spray on Robison a third time, viewing the evidence in the light most favorable to Robison as the non-moving party, a third use of OC spray would have been reasonable under the circumstances because at that moment, Robison was getting up from the ground again despite Testa's verbal commands.  In the similar Eighth Amendment context, the Court of Appeals has held that "[t]he use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary."  *Gibson v. Flemming*, 837 Fed. Appx. 860, 862 (3d Cir. 2020) (per curiam) (citing *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)).  *See also Passmore*, 528 Fed. Appx. at 147 (the "use of tear gas is not 'a per se violation of the Eighth Amendment…'") (citation omitted).  The first *Kingsley* factor supports the reasonableness of Testa's use of force.  The sixth factor also favors the reasonableness of Testa's actions because the same evidence shows that Robison "was actively resisting."  *Kingsley*, 576 U.S. at 397.

The second *Kingsley* factor also favors Testa because Robison's injuries were minimal.  Robison claimed that for a period of time after the altercation his eyes burned when he showered or washed his face and that "they d[id]n't seem to water." ECF No. 21, ¶ 10.  While unquestionably unpleasant, the temporary discomfort associated with the use of OC spray does not support a constitutional violation.  *Gibson*, 837 Fed. Appx. at 862.  *See also Martin v. Wetzel*, 2021 WL 2926005, at *11 (W.D. Pa. July 12, 2021), *appeal filed*, No. 21-2406 (3d Cir. July 28, 2021).

The record also shows that Testa initially used verbal commands and directions to "temper or to limit the amount of force" he used.  Based on this undisputed evidence, the third

*Kingsley* also favors Testa. *See Martin*, 2021 WL 2926005, at *11. Although the video recordings have no audio, Robison acknowledged in his Amended Complaint that while he was hitting Ingram in front of the desk, "Testa order[e]d the block to lock down", and that Testa "came around from the officers' desk and ordered me to get off Ingram or he would proceed to use his OC spray." ECF No. 21, ¶ 8. Although Robison initially complied, the fight resumed when Ingram followed Robison and reengaged. The videos also show Testa and the other officer at the desk gesturing in a manner that corroborates that they first tried to stop the fight with verbal and physical commands. Robison admitted that even after the first use of OC spray, his response to "Ingram trying to grab [him]" was that "[he] started kneeing him." ECF No. 21, ¶ 8. At that point, Testa again used OC spray. Thus, the record shows that Testa reasonably escalated his use of force to deploying OC spray only after his verbal and physical commands were ineffective to stop the altercation.

The fourth *Kingsley* factor, "the severity of the security problem" confronted by Testa, also supports the reasonableness of his use of force. Nine inmates were present in the day room at the time of the altercation. With the housing unit's cell doors open, more could have entered. The potential for violence to spread to others is inherent in these circumstances. During the altercation, another inmate approached Testa, Robison, and Ingram but ultimately withdrew in response to the Testa's and the other officer's verbal and physical directions. Faced with two inmates engaged in a violent struggle surrounded by other inmates, Testa's use of OC spray to mitigate this security threat was reasonable, particularly where verbal commands had failed to secure the inmates' compliance.

The fifth *Kingsley* factor—the threat reasonably perceived by the officer—also supports the entry of summary judgment in favor of Testa. In the context of claims under the Eighth

10

Amendment, courts evaluating the objective reasonableness of the officer's conduct consider the extent of the threat presented by the inmate to the safety of both staff *and* other inmates as reasonably perceived by the responsible official. *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009). The same consideration is relevant in the Fourteenth Amendment context. Viewing the video evidence from the perspective of a reasonable corrections officer in Testa's position, it was obvious that Robison presented a danger to Ingram. Testa had observed Robison attack Ingram from behind, punch him six or seven times, and knee him four times in the head before they first separated. Once the fight resumed, the video recordings show that Ingram remained under a significant threat from Robison's continued blows. At the same time, Robison faced a risk of serious injury at the hands of Ingram. The use of OC spray to stop the altercation avoided the need for corrections officers to physically intervene in the fight to separate the combatants, which materially reduced the risk of physical injury to the officers as well as the inmates. In sum, all six factors and other relevant circumstances confirm that no reasonable jury could find that Testa used excessive force against Robison. The evidence shows that Testa made split-second decisions regarding the amount of force necessary to end the altercation between Robison and Ingram and restore order in the prison day room. The force he chose to employ was objectively reasonable under the circumstances and demands deference from this reviewing Court.[4] *See Graham*, 490 U.S. at 396-97. Accordingly, the Defendants are entitled to summary judgment on this claim.

---

[4] Given this holding, Testa is also entitled to summary judgment based on qualified immunity. The qualified immunity defense requires consideration of two questions: Whether the facts "make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Because the facts do not support a constitutional violation, qualified immunity shields Testa from liability.

Because the record does not support an underlying constitutional violation, Sutter and Dahlkemper are also entitled to judgment as a matter of law on Robison's failure to train and supervise claims . *See Talley v. Varner*, 786 Fed. Appx. 326, 329 (3d Cir. 2019) (per curiam) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010) (a claim for supervisory liability "necessary includes as an element an actual violation at the hands of subordinates")). Robison's supervisory liability claims against Sutter and Dahlkemper also fail because he has not alleged facts to support an inference that either "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," or "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). A defendant in a § 1983 action "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)). Thus, summary judgment will be entered for Sutter and Dahlkemper.

V.      Leave to Amend Will Not Be Granted.

Although the Defendants moved to dismiss and, alternatively, for summary judgment, the Court has considered the motion as one for summary judgment and, based primarily on the video recordings of the use of force incident at issue, concluded that the Defendants are entitled to judgment as a matter of law. When dismissing a plaintiff's civil rights complaint based on a failure to state a claim, the Court must also determine whether further amendment to the plaintiff's pleading would be futile. *See Dickson v. Ennis*, 2021 WL 2322403, at *6 (W.D. Pa. June 7, 2021) (slip copy) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.

2002)). Given the Court's treatment of the motion as one for summary judgment, consideration of further amendment is not appropriate. In any event, further amendment would be futile because the undisputed evidence establishes the Defendants' entitlement to judgment as a matter of law and further amendment could not change that outcome. *See Bailey v. U.S. Marshals Serv. Headquarters*, 426 Fed. Appx. 44, 46-47 (3d Cir. 2011) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."); *Johnson v. Am. Airlines*, 834 F.2d 721, 724 (9th Cir. 1987)). Robison will not be granted leave to file a second amended complaint.

VI.   Conclusion

No genuine issue of material fact remains for trial, and the Defendants are entitled to judgment as a matter of law on each of Robison's claims. An appropriate order will follow.

DATED this 6th day of December, 2021.

BY THE COURT:

_____
RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE